JACKSON B. HOWARD AND GLORIA R. HOWARD v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Howard v. Commissioner
Docket No. 2799-74.
United States Tax Court
T.C. Memo 1976-5; 1976 Tax Ct. Memo LEXIS 401; 35 T.C.M. (CCH) 14; T.C.M. (RIA) 760005; January 7, 1976, Filed *401 S. Rex Lewis, appearing specially for the petitioners. James L. Norris, for the respondent FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency of $20,266.41 in the Federal income tax of petitioners for 1970. We are to decide if respondent properly disallowed an interest expenses deduction claimed on the return filed for the year in issue by a partnership of which Jackson B. Howard was a member. FINDINGS OF FACT Certain facts have been stipulated and are so found. Petitioners Jackson B. and Gloria Howard are husband and wife. They filed a joint Federal income tax return for the year in issue with the director of the western region, Internal Revenue Service Center, Ogden, Utah. They were residents of Provo, Utah, when they filed their petition with this Court. Petitioners reported income and expenditures according to the cash receipts and disbursements method of accounting. Hereafter Jackson B. Howard alone shall be referred to as petitioner. At all times relevant, petitioner and S. Rex Lewis engaged in the practice of law as partners in Provo. They also had equal interests in a partnership styled "Howard *402 and Lewis Investments" (HLI) which they organized to invest in real property. HLI reported income and expenditures according to the cash receipts and disbursements method of accounting. Certain of HLI's holdings were considered suitable as sites for automobile service stations by Texaco, Inc.; and early in 1970 Texaco offered to purchase these holdings (hereafter referred to as the Orem property). While Texaco was expressing an interest in the Orem property, petitioner and Lewis were looking to acquire some real property in the south of California. They therefore suggested to Texaco that in lieu of a sale, an exchange of the Orem property for some realty in the environs of Los Angeles be arranged. In September 1970 petitioner was contacted by a representative of Martin V. Smith, an acquaintance of his and the owner of Anchorage Development Co., Inc. Smith planned that Anchorage should build and operate a 118-unit apartment complex on a piece of land which it owned in Ventura County, California (hereafter referred to as the Ventura property). Smith, however, lacked the funds necessary to inaugurate such a project. He therefore proposed that petitioner and Lewis participate in *403 the venture, their combined interests to be equal to that of Anchorage. Pursuant to Smith's proposal, it was agreed that Texaco would purchase an undivided one-half interest in the Ventura property and then exchange that interest for the Orem property. The purchase and exchange having been effected, Anchorage and HLI applied to the Trans-Coast Savings and Loan Association of Oxnard (California) for a loan of $900,000 to finance the construction of the apartment complex on the Ventura property. On December 28, 1970, a loan agreement was concluded under the terms of which the borrowers obligated themselves to commence construction of the apartment complex by the middle of March 1971. [1] To finance the project the lenders [2] agreed to place $900,000 in a special noninterest-bearing account at Trans-Coast. The funds in the account were to be disbursed in installments from time to time to pay for work done or materials furnished in the construction of the complex. [3]
The note signed on December 28, 1970, pursuant *404 to the loan agreement provided that interest be payable at the rate of 9 percent per annum. Through June 15, 1971, interest was to be payable only on the amounts that had actually been disbursed. Thereafter it was to be payable on the full amount of the loan. In all, $48,228.75 in interest became payable under the note in 1971. Beginning on January 15, 1972, principal and interest were to be payable in monthly installments of $7,553 until principal and interest were paid in full. The note reserved to the borrowers the right to make prepayment on any installments to become due. However, in the event that the aggregate amount of such prepayments in any successive 12-month period, including the regular monthly installment payments, equalled or exceeded 20 percent of the principal, the lenders would be entitled to demand an amount equal to 180 days' interest on the original principal, this amount to constitute consideration for the acceptance of the prepayment and to compensate the lenders for their expenses. In negotiating with Smith, petitioner and Lewis agreed that HLI would bear the expense of the first $80,000 of interest to accrue on the construction loan. To discharge this obligation, *405 petitioner and Lewis each borrowed $40,000 from the Commercial and Farmers National Bank of Oxnard. Of the proceeds of each of these loans, $18,000 was applied toward the payment of four "points," in this instance equalling $36,000, which the lenders insisted the borrowers pay as a prerequisite to obtaining the construction loan. The $36,000 was paid on December 28, 1970, when the loan agreement was concluded. On the same day the balance of each loan obtained from Commercial was used to make a voluntary prepayment of interest in the amount of $44,000, which was to become payable on the construction loan in 1971. Construction of the apartment complex, the Villa Scandia, was completed in September 1971. The complex was managed by Anchorage which was compensated for this service with 4 percent of the gross rentals derived from the project. On the U.S. partnership returns filed for 1968 and 1969, HLI reported losses of $7,085.63 and $1,974.17, respectively. Petitioner's respective distributive share of those losses was $3,542.82 and $987.09. On joint returns filed for 1968 and 1969 petitioner reported taxable income of $71,486.31 and $102,764.51, respectively. On the return which *406 it filed for 1970, HLI claimed a deduction of $80,000 for the $36,000 loan fee and the $44,000 of interest paid by petitioner and Howard on December 28, 1970; and HLI reported a loss of $81,549.95, of which petitioner's distributive share was $40,774.98. On the joint return filed for 1970, petitioner reported taxable income of $26,043.25. OPINION The deficiency in issue is attributable to HLI's having reported a loss on the return which it filed for 1970. This loss was attributable in part to HLI's having deducted the $36,000 loan fee and the $44,000 of prepaid interest. Respondent would disallow these deductions. We hold that the issue presented be resolved in accordance with the opinion which we rendered in S. Rex Lewis, 65 T.C. - (Dec. 24, 1975). Decision will be entered under Rule 155.
Footnotes
1. Work in fact commenced in January 1971. ↩
2. The lenders were Trans-Coast and the Santa Maria Savings and Loan Association. ↩
3. No amounts were disbursed until after December 31, 1970.↩